UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 07-cr-20047-JES-DGB |
| | ) |
| ROBERT L. BROOKS, | ) |
| | ) |
| Defendant. | ) |

# ORDER AND OPINION

This matter is now before the Court on Defendant Brooks' Motion (Doc. 54) to Reduce Sentence Pursuant to 18 U.S.C. § 3582, the United States' Response (Doc. 61), and Defendant's Reply (Doc. 66). For the reasons that follow, Defendant's Motion (Doc. 54) to Reduce Sentence Pursuant to 18 U.S.C. § 3582 is GRANTED.

### BACKGROUND

On September 6, 2007, Defendant Brooks was sentenced to 274 months of imprisonment for four violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) while on pretrial release. He was also sentenced to a consecutive 84-month term for possessing a firearm as a felon. His 274-month sentence was later reduced to 200 months under the First Step Act. Doc. 48. He is serving his sentence FCI Elkton, in Lisbon, Ohio. His projected release date is May 26, 2027. Doc. 54, at 2. In light of the ongoing COVID-19 pandemic, Defendant moves for an order reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), often referred to as the compassionate release statute. Doc. 54. The United States responded to Defendant's Motion and opposed the request on the merits. Doc. 61.

**COVID-19 Background**

COVID-19 is a new "respiratory disease spreading from person to person." Situation Summary, Ctrs. for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html#background (last updated Apr. 19, 2020).  The current global pandemic of COVID-19 "poses a serious public health risk." *Id.*  "COVID-19 can cause mild to severe illness" with the "most severe illness occur[ing] in adults 65 years and older and people of any age with serious underlying medical problems." *Id.*

**Defendant's Health**

Defendant is 45 years old and suffers from morbid obesity, severe, chronic asthma, and high blood pressure. Doc. 54, at 2. He is currently recovering from a bowel obstruction surgery performed on February 28, 2020. Doc. 54, at 4.

**COVID-19 in the Bureau of Prisons**

The CDC has recognized that correctional facilities face unique challenges in controlling the spread of COVID-19.  Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Apr. 30, 2020).  For instance, because incarcerated "persons live, work, eat, study, and recreate within congregate environments," there is a heightened "potential for COVID-19 to spread once introduced." *Id.* Recognizing this, the Bureau of Prisons ("BOP") has modified operations in all facilities, by, for example, suspending social and legal visits, limiting internal movement of inmates, suspending staff travel, and screening staff and inmates.  BOP Implementing Modified Operations, BOP,

https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Apr. 30, 2020).

Notwithstanding these efforts, inmates and staff at various BOP institutions have tested positive for COVID-19. At FCI Elkton, Defendant's institution, there are currently 76 inmates and 12 staff with known active cases of COVID-19; 9 inmates have died, 54 inmates have recovered, and 12 staff have recovered. *See* COVID-19 Coronavirus, BOP, https://www.bop.gov/coronavirus/ (last visited May 14, 2020) (scroll down to the COVID-19 Cases section, then click on "Full breakdown and additional details"). Pursuant to the Court's May 12, 2020 Order in another case,[1] the United States has identified the following additional information:

1. The number and percentage of inmates at FCI Elkton who have been tested for COVID-19, as of May 12, 2020:
    a. Of the 2,357 total inmates, 264 inmates (11.2%) at FCI Elkton have been tested for COVID-19 as of May 8, 2020.
2. The number and percentage of inmates at FCI Elkton who have tested positive for COVID-19:
    a. As of May 14, 2020, 139 inmates (5.9%) have tested positive; 76 are currently ill, 54 have recovered, and 9 have died.
3. The number of inmates at FCI Elkton who have been released, transferred, furloughed, or otherwise removed from FCI Elkton by (a) the BOP or (b) court intervention:
    a. While unable to provide information specific to FCI Elkton, the United States indicates the BOP has placed approximately 2,549 inmates, or 1.8% of the BOP's 139,268 inmates, on home confinement pursuant to the CARES Act and the Attorney General's COVID-19 guidelines.
4. The number of inmates from FCI Elkton with COVID-19 who are currently (a) hospitalized or (b) intubated:
    a. As of May 8, 2020, 20 inmates from FCI-Elkton have been hospitalized and
    b. 7 inmates from FCI Elkton have been intubated.

Doc. 111 (paras 1, 2, 4), Doc. 112 (para 3).

## LEGAL STANDARD

"[A] judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment" that can be modified in only certain enumerated circumstances. 18 U.S.C.

---

[1] *See United States v. Seggebruch*, No. 15-cr-20034, at ECF Docs. 11, 112 (C.D. Ill. May 14, 2020).

§ 3582(b). As relevant here:

> [a] court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that (i) extraordinary and compelling reasons warrant such a reduction

and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *cf. United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## DISCUSSION

Defendant contends that he should be released pursuant to § 3582(c)(1)(A)(i) because his morbid obesity, severe, chronic asthma, high blood pressure, and recent surgery make him uniquely at risk during the COVID-19 pandemic. Doc. 54, at 14. Additionally, Defendant argues the § 3553(a) factors may be satisfied by placing Defendant on home confinement as a condition of supervised release. *Id.* at 21.

**Exhaustion**

In light of the United States' waiver of the issue of exhaustion in this case, the Court finds Defendant has sufficiently exhausted his administrative remedies under Section 3582(c)(1)(A) and proceeds to the merits of his request for compassionate release. *See* Doc. 61, at 17 n.4.

**Merits**

Defendant argues that he has shown that extraordinary and compelling reasons warrant his release because his morbid obesity, severe, chronic asthma, high blood pressure, and recent surgery make him uniquely at risk during the COVID-19 pandemic and the outbreak and conditions at FCI Elkton have not been controlled. Doc. 54, at 14.

The United States argues that Defendant does not qualify for compassionate release because his medical conditions and age do not constitute extraordinary and compelling reasons and do not justify release. Doc. 61, at 17.

The compassionate release statute directs the Court to make three considerations: 1) whether extraordinary and compelling reasons warrant a sentence reduction; 2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and 3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

The Sentencing Guideline's policy statement defines what constitutes extraordinary and compelling reasons that warrant a sentence reduction. *See* U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). Application notes explain that the medical condition of the defendant (i.e., if he suffers from a terminal illness or a serious physical or medical condition that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"), his age (i.e., if he is 65 and declining in health and has served a large portion of his sentence already), or his family circumstance (i.e., if the caregiver for his minor children dies or becomes incapacitated) can constitute extraordinary and compelling reasons warranting release. *Id.* § 1B1.13 cmt. n.1(A)–(C).

Previously § 3582(c)(1)(A) allowed only the BOP to bring a motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 2, 2002 through Dec. 20, 2018). The Sentencing Commission has not updated its policy statement to reflect that a defendant can make his own motion for a sentencing reduction. Some courts have held that this means there is currently no policy statement with which sentencing reductions under § 3582(c)(1)(A) must be consistent. *See, e.g.*, *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020).

In *Redd*, the district court held "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case constitute extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement." No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020). Specifically, the court reasoned:

> Since Mr. Redd does not rely on reasons set forth in subdivisions (A)-(C) and the BOP Director has not determined under subdivision (D) that there are "other reasons," the Government argues that the Court is precluded from finding that there exists an extraordinary and compelling reason "consistent with the applicable policy statement." *Id*. The Court disagrees with the Government's position.
>
> First, the Court concludes, as other courts have and as the Government has essentially conceded in at least one case, that there does not currently exist, for the purposes of satisfying the First Step Act's "consistency" requirement, an "applicable policy statement." The only possibly applicable policy statement with respect to such a reduction is U.S.S.G. § 1B1.13 (2018), which by its terms applies only to motions for compassionate release filed by the BOP Director, not motions filed by defendants. Second, even were U.S.S.G. § 1B1.13 the applicable policy statement for the purpose of satisfying the consistency requirement, the Government's position fails to recognize and accommodate the effect the legislative amendments under the First Step Act have necessarily had on U.S.S.G. § 1B1.13.
>
> The First Step was passed against the backdrop of a documented infrequency with

6

which the BOP filed motions for a sentence reduction on behalf of defendants. And while the First Step Act did preserve the BOP's role relative to a sentence reduction in certain limited respects, it eliminated the BOP Director's role as the *exclusive* channel through which a sentence reduction could be considered by courts. Indeed, the First Step Act authorized courts to act independently of the BOP Director, upon a defendant's motion, once administrative remedies are exhausted, reflecting the First Step Act's legislative purpose and intent to expand the opportunity for a defendant to seek review (and potentially a reduction) of his or her sentence. In that regard, the First Step Act effectively amended U.S.S.G. § 1B1.13 by eliminating the requirement that a sentence reduction under § 3582(c)(1)(A) be "upon motion of the Director of Bureau of Prisons," as U.S.S.G. § 1B1.13 requires. For this reason, any assessment of whether a court acted "consistent" with U.S.S.G. § 1B1.13 based on reasons other than those specifically mentioned in Application Notes 1(A)-(C) must consider the First Step Act's effect on that policy statement, and Application Note 1(D) in particular. *See also* 18 U.S.C. § 3553(a)(5) (any "pertinent policy statement" is to be considered "subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into the amendments issued under section 994(p) of title 28."); *Mistretta v. United States*, 488 U.S. 361, 394, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (Congress may "revoke or amend" any of the Commission's policy statements by statute at any time); *Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").

Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination. For these reasons, whether a court's finding of a warranted sentence reduction based on "other reasons" would be consistent with U.S.S.G. § 1B1.13 should be assessed based on whether that finding would be consistent with those other reasons had they been presented to the Court by the BOP Director as the basis for relief. Important in that regard is that any reason determined by the BOP Director to warrant a sentence reduction is, by virtue of the policy statement, automatically "consistent" with that applicable policy statement. *See* U.S.S.G. § 1B1.13, cmt. n. 5 ("Any reduction made pursuant to a motion by the Director of the Bureau of Prisons for the reasons set forth in subdivisions (1) and (2) [of U.S.S.G. § 1B1.13] is consistent with this policy statement."). Further, restricting the Court to those reasons set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C), as the Government proposes, would effectively preserve to a large extent the BOP's role as the exclusive gatekeeper, which the First Step Act substantially eliminated, as discussed above.

> For the above reasons, the Court joins other courts in concluding that a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case constitute extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement.

*Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *6–8. Other courts have taken the same or similar position. *See also, e.g.*, *Young*, 2020 WL 1047815, 2020 U.S. Dist. LEXIS 37395; *United States v. O'Bryan*, 2020 WL 869475 (D. Kan. Feb. 21, 2020); *United States v. Kepa Maumau*, No. 08-cr-758-TC-11, 2020 U.S. Dist. LEXIS 28392, 2020 WL 806121 (D. Utah Feb. 18, 2020); *Urkevich*, 2019 WL 6037391, at *3-4, 2019 U.S. Dist. LEXIS 197408, at *7-9 (finding extraordinary and compelling circumstances to exist under the "other reasons" catch-all, absent a determination by the BOP); *United States v. Brown*, 411 F.Supp.3d 446, 447-52 (S.D. Iowa 2019); *United States v. Fox*, 2019 WL 3046086, at *3, 2019 U.S. Dist. LEXIS 115388, at *7 (D. Me. July 11, 2019) ("That deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role ... [and] I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); *United States v. Cantu-Rivera*, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019); *Cantu*, 2019 WL 2498923, at *5-6, 2019 U.S. Dist. LEXIS 100923, at *13-14 ("[T]he correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements at any time, is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.") (citations omitted).

Here, the Court agrees with the analysis in the cases such as *Redd*, and adopts the above

analysis here. A court may find that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C), and without the BOP's motion or express finding.

This Court has previously stated "the mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, No. 12-cr-20050, at ECF Doc. 41 at p. 5 (C.D. Ill. May 12, 2020). However, the Court also opined, "[p]erhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Courts around the country have granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19. *See, e.g.*, *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Bess*, No. 16-cr-156, 2020 WL 1940809, at *8 (W.D.N.Y. Apr. 22, 2020) (congestive heart failure, coronary artery disease, diabetes, and hypertension); *United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (diabetes, hypertension, and obesity); *United States v. Williams*, No. 3:04cr95/MCR, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020) (coronary disease, peripheral vascular disease, congestive heart failure, end-stage renal disease, hyperlipidemia, and prediabetes); *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2–3 (E.D. Wash. Mar. 31, 2020) (chronic obstructive pulmonary disease and significant emphysema). Courts have also

9

granted compassionate release where the defendant is immunocompromised. *See, e.g.*, *United States v. Robinson*, No. 18-cr-00597-RS-1, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020) (defendant was taking immunosuppressants); *United States v. Edwards*, No. 6:17-cr-00003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020) (defendant was immunocompromised due to brain cancer, chemotherapy, and steroid prescription); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) (defendant suffered "from a compromised immune system with very low white blood cell counts" (quotation marks omitted)).

Here, the Court believes Defendant has met his burden to establish that extraordinary and compelling reasons justify his release from prison. First, Defendant's institution, FCI Elkton, is facing a serious outbreak of COVID-19 infections. Using the numbers provided by the United States in its Status Report in another case from FCI Elkton, over 50% of the inmates at FCI Elkton who have been tested are positive. Doc. 111, at 2. Given the woefully insufficient amount of testing at FCI Elkton as of this date, it is likely the number of infected inmates is underreported.

Second, FCI Elkton has shown an inability to successfully contain the outbreak thus far. As noted above, 139 inmates have tested positive at FCI Elkton and there are likely many more unreported cases. Further, Defendant is housed in close quarters and shares showers, toilets, and sinks with other inmates. Defendant reports that two individuals housed in an adjacent pod 6 feet away from his living quarters both recently tested positive for the virus. Doc. 54, at 18. This Court is not alone in observing the troubling trend and BOP's inadequate response to the COVID-19 outbreak at FCI Elkton. *See Wilson v. Williams, et al.*, No. 4:20-cv-00794 (N.D. Ohio).

Third, Defendant's morbid obesity, severe, chronic asthma, high blood pressure, and recent surgery place him at significant risk of complications from COVID-19. As noted by Defendant, each of his medical conditions has been identified by the CDC as factors increasing the risk of severe illness or death if exposed to COVID-19. Doc. 54, at 15 (listing asthma, serious heart conditions, prolonged use of corticosteroids, and severe obesity). In light of the above, the Court finds Defendant has established extraordinary and compelling reasons justifying his early release from FCI Elkton.

**The § 3553(a) Factors**

Even if Defendant shows extraordinary and compelling reasons justifying his early release, the Court must still assess the appropriateness of release through consideration of the § 3553(a) factors. 18 U.S.C. § 3582(b). These factors include, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2)(A); "the need for the sentence imposed to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B); and "the kinds of sentences available." *Id.* § 3553(a)(3).

As the United States correctly notes, Defendant's lengthy sentence was imposed to reflect the seriousness of his offense conduct. Doc. 61, at 25–26. The United States argues his criminal history and conduct while on bond establish that he is a danger to the safety of the community. *Id*.

There are also mitigating factors in Defendant's personal history. While in custody, Defendant has completed his GED, obtained many professional and educational certificates, he has maintained steady employment in the UNICOR program, he was selected to spearhead the

11

UNICOR program at another institution, he served as a Star Suicide Companion, and has been characterized by the BOP to have a low risk or recidivism. Doc. 54, at 20. He has served 13 years of his prison sentence. Further, if released, Defendant plans to go immediately to his home with his fiancé and two children in Akron, Ohio where he will self-quarantine. He has arranged transportation in the event he is released. *Id*.

Having considered the § 3553(a) factors, the Court finds that a reduction in Defendant's custodial sentence to time-served, together with the already imposed conditions of supervised release, weigh in favor of granting Defendant's Motion. A reduction in his sentence, together with supervision from his probation officer, the requirement Defendant isolate for at least 14 days in the BOP, and a condition that he remain in home confinement for a period of 12 months will ensure Defendant's sentence will still reflect the seriousness of his offense. Placing Defendant on home confinement and careful supervision will promote respect for the law while also providing just punishment for the offense. While the Court does not have a crystal ball, on the information before it, the Court does believe Defendant will pose a danger to the community if released, and apparently neither does the BOP—it has previously furloughed Defendant while he was between facilities. Doc. 66, at 3. On the other hand, keeping Defendant imprisoned in an institution unable to quell the plague of COVID-19 within is not consistent with any of the § 3553(a) factors. Defendant's request for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) is therefore granted.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 54) to Reduce Sentence Pursuant to 18 U.S.C. § 3582 is GRANTED. It is FURTHER ORDERED that:

1. The BOP shall IMMEDIATELY place Defendant in isolation or quarantine for a period

   not to exceed 14 days;

2. Thereafter, the BOP shall immediately release Defendant Brooks from FCI Elkton;

3. Defendant's term of supervised release shall begin immediately upon his release and shall include home confinement for 12 months;

4. Defendant shall be monitored by location monitoring, GPS monitoring, or telephonic monitoring as approved by the U.S. Probation Office;

5. Defendant is required to contact the probation office in the district where he was released within 48 hours of his release. The Probation Office has indicated that the release plan proposed by Defendant is not suitable; therefore, during the 14-day period when Defendant is placed under quarantine, the Probation Office is directed to confer with the defendant and his counsel to develop a suitable release plan.

Signed on this 15th day of May, 2020.

s/ James E. Shadid  
James E. Shadid  
United States District Judge